## *In re* DONN *et al.*

(*Supreme Court, Special Term, Erie County.*)

CEMETERIES—RIGHT TO REMOVE BODIES.

 Deceased, a Roman Catholic, was, at her request, buried in the consecrated ceme-
tery of her church, her husband making no objection, though, not being a member
of the church, he knew he could not be buried beside her. At his death, 11 years
afterwards, he was buried in a different cemetery. *Held* that, though a church
has no control over the corpse of a member, in view of the wishes of the wife and
consent of her husband, a court of equity will not, at the instance of their children,
decree them the right to remove her body, and place it beside that of the hus-
band.

This is an application for an order directing the defendant, the German
and French Roman Catholic Association of Buffalo, to deliver to the peti-
tioners the body of their mother, Elizabeth Donn, interred in defendant's
cemetery grounds, for the purpose of reinterment thereof in the petitioners'
family lot in the Buffalo Forest Lawn Cemetery.

*George W. Wheeler*, for petitioners.   *Warren F. Miller*, for association.

LEWIS, J. The following facts are established by relators' petition and
the affidavit of the president of the defendant: The petitioners are the only
heirs at law and next of kin of Nicholas Donn and Elizabeth Donn, deceased.
The defendant is a Roman Catholic cemetery association in Buffalo, organ-
ized under and by virtue of the statutes of this state for the organization of
cemetery associations. The petitioners' mother died on the 16th day of Oc-
tober, 1879, and was thereupon duly interred in the defendant's cemetery.
She was at the time of her death a member of a Roman Catholic Church in
Buffalo, and her burial in the defendant's ground was pursuant to a request
made by her. The funeral ceremonies were conducted according to the rites
of the Roman Catholic Church. The petitioners' father, Nicholas Donn, died
in Buffalo on the 6th day of October, 1890, and was thereupon duly interred
by the petitioners in their family lot in Forest Lawn Cemetery. Forest
Lawn is not a Roman Catholic cemetery. The defendant's burial grounds
are in Buffalo, and are managed and controlled by trustees, under the rules
and regulations of the Roman Catholic Church. Its grounds have been, pur-
suant to the rites and canons of the Roman Catholic Church, consecrated to
the burial of the members thereof. The rules and canons of that church for-
bid the removal of bodies buried in consecrated grounds, with a view to their
burial in grounds not consecrated by that church. The petitioners in De-
cember, 1890, obtained a proper permit from the health department of Buffalo
for the removal of their mother's body from the defendant's grounds for re-
interment in Forest Lawn, and thereupon made application at the defendant's
office, to a clerk in charge thereof, for the possession and removal of their
mother's body, and paid the clerk the sum of five dollars, that being the
amount he demanded for the expenses attending the removal of the body;
and the petitioners at the same time presented to the clerk the permit from
the health department for the removal. The clerk gave his consent to the
removal, but when the matter came to the knowledge of the officers of the
association, and they were informed of the purpose of the removal, they
offered to return the money to the petitioners, and made it a condition of the
removal that the petitioners obtain the consent of a Roman Catholic priest
of Buffalo. The petitioners applied to the priest of the St. Louis Roman
Catholic Church of Buffalo for the required permit, which was refused. The
defendant puts its refusal to surrender the body of Mrs. Donn upon the grounds
that by the canons of the Roman Catholic Church it had jurisdiction over,
and the right to care for and control, bodies buried in Roman Catholic ceme-
teries, and that the canons of that church forbid the removal of a body com-

mitted to grounds consecrated by that church, with a view to the burial there-of in grounds not thus consecrated.

Two questions are thus presented for my decision: *First.* Has the Roman Catholic Church any jurisdiction over or control of the body of Mrs. Donn? *Second.* Under the facts and circumstances stated, should an order be granted directing the defendant to deliver to the petitioners the body of their mother?

The claim of the defendant to the custody and control of the body of Mrs. Donn, because the canons of the Roman Catholic Church forbid the removal of bodies buried in grounds consecrated pursuant to the rites and canons of the Roman Catholic religion, has no foundation, under the laws of this state. The doctrine that the dead bodies of the votaries of a church are under the supervision and control of ecclesiastical authorities, to the exclusion of the next of kin of the deceased, has obtained in England. The civil courts at first exercised jurisdiction in such matters, but the ecclesiastical authorities gradually usurped jurisdiction, until it became the settled law that the church had the exclusive control of the dead bodies of their members; and, while the heirs and next of kin were permitted to erect monuments and embellish the graves of their kin at their own expense, they were not permitted to have any choice or to give directions as to the ceremonies attending the funeral, or the place of burial, or to have control in any manner over the bodies of their deceased relatives. But, while we adopted many of the laws and institutions of England in the formation of our government, we have persistently, constantly, and successfully thus far resisted all attempts on the part of ecclesiastical authorities or churches to usurp or control the powers and rights of the legislative or judicial departments of this country. While we grant to all religious organizations the largest and broadest latitude and liberty to adopt all or any proper rules or regulations, to the end that their votaries may worship God according to the dictates of their conscience, we have jealously watched and resisted any and all attempts on their part to usurp powers or authority outside or beyond their legitimate functions of caring for and administering spiritual affairs. While it cannot be said that a corpse is property in the sense that it is a subject of barter and sale, the courts of this country have recognized the right and authority of the next of kin, in proper cases, to control and possess it; and when an ecclesiastical body assumes jurisdiction and control over a corpse its acts are of a temporal and juridical character, and not in any sense spiritual; and, under our laws and institutions, when it attempts so to do it is acting outside of its proper jurisdiction and domain. The necessity for the exercise of jurisdiction in such matters by legal tribunals in this country is very apparent. If the heirs and next of kin of a deceased person have no right to the possession or authority to control, in a proper case, the body of their deceased relative, it might be left unprotected; and, in case a corpse should be found in the possession of one who had invaded the grave and disinterred it, they would be powerless to reclaim it. While, therefore, I think it quite clear and beyond question that the church in this case has no control or jurisdiction over the body of Mrs. Donn, were this the only question in the case I should have no hesitation in granting the motion. There is, however, another and a more serious question. The deceased was a member of a Roman Catholic Church. I assume that she entertained the views in reference to her burial common to the members of that body, and that she believed that her welfare after death depended to some extent upon whether her body was interred in ground consecrated by her church. The papers before me show that she was buried there pursuant to her request. She made that request knowing that her husband, not being a member of her church, could not be buried by her side. She was buried about 11 years before her husband died. The petition being silent upon the subject, I must assume that she was buried there by the consent of her husband.

He so far respected the religious belief of his wife as to consent that she should be buried in grounds from which his body would be excluded. I am not informed as to the ages of the petitioners, but, having petitioned in their own names, I assume that they have arrived at their majority; and, nothing appearing to the contrary, I assume that they also consented that their mother's wishes should be complied with in her burial. To permit them now to remove their mother's body from the place deemed consecrated by her, in violation of her request and wish, expressed while living, and inter it in a cemetery where the mother would not have consented to be buried, and when their father is incapable of giving his consent, would seem to be doing violence to the wishes of both father and mother. It is the almost universal practice among civilized people to scrupulously conform to the wishes and requests of friends and relatives as to the disposition to be made of their bodies. There does not seem to be any reason why the petitioners should not observe this very wholesome practice. I have not been able to find that this question has been adjudicated by the courts of this state. Questions somewhat analogous have been decided in the courts of other states. The case of *Pierce* v. *Cemetery*, 10 R. I. 227, was a bill in equity by a daughter against her mother and the cemetery. The complaint alleged that her father was buried in a lot purchased by him, and in accordance with his wishes and desires expressed during his life-time, and with the approbation of the widow, and remained so interred 13 years, when the body was removed by the widow to another lot in the same cemetery, against the protests of the complainant. The widow demurred to the bill. The cemetery answered, denying the jurisdiction of the court to direct or control the management of its internal affairs, but submitting to execute, or permit to be executed, such decree as the court might make. It was held that, taking these allegations as true, as the body was removed by the widow, without the consent of the child, from a place where it was deposited by his own wishes and her consent, it should be restored to the place whence it came; that while a dead body is not property, in the strict sense of the common law, it is a *quasi* property, over which the relatives of the deceased have rights which the court will protect; but the person having charge of it cannot be considered as the owner of it, in any sense whatever. He holds it only as a sacred trust, for the benefit of all who may, from family or friendship, have an interest in it, and a court of equity may regulate it as such, and change the custody, if improperly managed. It was held that there was no doubt that the court had jurisdiction in the case; that the corporation held the lands for certain purposes, and for those only; that it has a certain control over the property, but that control is to be exercised in such a manner as to carry out, at least not to interfere with, the legal rights of those who hold burial lots under them. It was further held that a sort of right of custody over or interest in the dead body of the relatives of the deceased is recognized in the statutes of many of our states, and the demurrer was overruled. *Wynkoop* v. *Wynkoop*, 42 Pa. St. 293, was a bill in equity filed by the widow against the brother of her deceased husband and his mother, in whose cemetery lot he was buried, to obtain the removal of the body to another cemetery. In conclusion the court said: "Besides, the fact that the body of her son is deposited in her burial-ground, in consecrated ground; and that he was buried with the ceremonies of the church, and with the honors of war, is sufficient to justify us in refusing permission to a removal, under the circumstances. We do not think the present case calls for the interference of a court of equity." (The deceased was an Episcopalian.) *Weld* v. *Walker*, 130 Mass. 422, was a bill in equity by the husband against his deceased wife's brother-in-law and the cemetery, to obtain permission of the court for the removal of her remains from their lot to his own family lot, in another cemetery. Held that, as the husband had not freely consented to a burial of his wife in the said cemetery lot with the intention

or understanding that it should be her final resting place, the court may permit him to remove her body to the lot owned by himself and his kindred. *Lowrie* v. *Plitt*, 11 Phila. 303. The deceased at her request, and with the concurrence of all her children but one, who was absent in Peru, was buried in her sister's lot. Held, that that one child was not entitled to the decree of a court of equity for the removal of his mother's remains to a lot purchased by him in another cemetery, against the wishes of his brother and sisters and the lot-owner. "The controversy is about the right to disinter and remove, after appropriate obsequies, which were considered by all interested as final. * * * When it is considered that the removal of the remains of Mrs. Lowrie involves an invasion of the rights of Mrs. Plitt, (the lot-owner,) it is not clear that, even if all the next of kin had joined in these proceedings, we could have granted the relief prayed for. The law regards with favor the ' repose of the dead.' When they are buried in the places selected by them, it must be something more than sentiment or abstract right which will induce us to enforce the claim of the next of kin by the invasion of the burial place of another. In such a case, it may well be questioned whether the right of the next of kin exists at all." In *Fox* v. *Gordon*, 40 Leg. Int. 374, (Philadelphia common pleas,) it was held that when the husband has once exercised the right of burial, and consented to the burial of his wife in a certain place, he cannot, after the lapse of years, remove the remains to another place. The wife and child who had died some weeks previous were interred, with the consent of the husband, in the burial lot of the father-in-law, by whom the expenses in the last sickness and funerals of both were paid. The husband had acquiesced three years in the place of burial. *Secor's Case*, (Pa.) 31 Leg. Int. 268. I have not seen this case, but it is cited for the proposition that a son cannot remove the corpse of his father from the family burial place; that a proper respect for the dead, a regard for the tender sensibilities of the living, and the due preservation of the public health, require that a corpse should not be disinterred or transported from place to place, except under extreme circumstances of exigency. In *Peters* v. *Peters*, (N. J.) 10 Atl. Rep. 742, the widow consented that the body of her husband should be buried in his father's lot, and she was enjoined from removing it to another place of sepulture. While I have great respect for the desire of the petitioners that the body of their loved mother should lie by the side of their father, and in the lot where their bodies may finally rest, I think they have failed to fully realize and appreciate the wishes and desires of their parents. They, as their father, for 11 years consented that their mother's body should repose in ground of her own selection. I do not think it fit or proper that it should now be disturbed. The motion is therefore denied, and an order may be entered to that effect.