Estelle R. WOLF, Plaintiff–Appellant,

v.

**ROSE HILL CEMETERY ASSOCIATION**
and United Hebrew Cemetery Association, Inc., Defendants–Appellees.

No. 90CA1811.

Colorado Court of Appeals,
Div. III.

Nov. 21, 1991.

Rehearing Denied Jan. 9, 1992.

Certiorari Denied July 13, 1992.

Clifton P. Schroeder, P.C., Clifton P. Schroeder, Englewood, for plaintiff-appellant.

Gilbert Goldstein, P.C., Gilbert Goldstein, Englewood, for defendants-appellees.

Opinion by Judge NEY.

In this matter of first impression, plaintiff, Estelle R. Wolf, appeals the trial court's order denying her the right to disinter her father and sister from a cemetery operated by defendants, Rose Hill Cemetery Association and United Hebrew Cemetery Association, Inc. We reverse and remand.

Plaintiff's father and sister have been buried at defendant's cemetery for 36 and 47 years respectively. Plaintiff wishes to have her father and sister reinterred in a family plot at another cemetery where her mother is buried.

During her lifetime, plaintiff's mother expressed her displeasure with Rose Hill

Cemetery and requested plaintiff to purchase a family plot at a different cemetery where she would be buried along with the reinterred remains of her husband and daughter. Plaintiff's mother disliked Rose Hill because her husband and daughter were separated and because of its location near Stapleton Airport, a dog racing track, and the Rocky Mountain Arsenal.

Defendants refused plaintiff's request for disinterment of her father and sister because Rose Hill is operated as an Orthodox Jewish cemetery, and under Orthodox Jewish law, disinterments are permitted only under very limited circumstances.

Plaintiff's uncle, the brother of her father, made the original interment arrangements. There existed no written contract between any member of plaintiff's family and the defendants regarding the issues raised in this controversy.

Although plaintiff's mother wished the bodies disinterred from defendants' cemetery and reinterred in a family plot at another cemetery, she took no steps to disinter the bodies during her lifetime. The plaintiff and her sister are the only surviving children, and both wish the bodies disinterred and reburied in the family plot.

The court considered testimony by orthodox and reform rabbis regarding theological law and its application to the issues involved in this case. There was conflicting testimony over how to apply Jewish law to determine the decedent's religious beliefs, their desires regarding burial, and whether disinterment would be permitted.

As decedents had made no expressions of their desires regarding burial arrangements, the trial court, applying conflicting conclusions of Jewish doctrine as testified by various rabbis, attempted to determine the religious beliefs of plaintiff's father and thereby deduce his wishes. Uncontroverted testimony indicated that the father worked and drove a car on the Sabbath, dined at non-kosher restaurants, and only went to synagogue on high holidays which would indicate that he was not an Orthodox Jew. However, the court concluded that plaintiff's, father was an Orthodox Jew because there was evidence that he kept a kosher house. The court then concluded decedent, as an Orthodox Jew, would not wish to be disinterred and reburied in a non-orthodox Jewish cemetery.

The court's order indicated that theological doctrine would not be used as a basis of its findings except to the extent that Judaism would have an effect on the equitable factors involved. However, the court used religious doctrine in finding the orthodox rabbis' testimonies "more persuasive and credible" to infer that plaintiff's father was an Orthodox Jew and, therefore, would have intended that he and his daughter remain at Rose Hill. Based on the testimony of the orthodox rabbis, the court also determined that disinterment from an Orthodox Jewish cemetery would be a desecration of hallowed ground and, therefore, would have a negative impact on the cemetery and others.

In weighing these secular and religious considerations, the court concluded that the equitable balance strongly favored the decedents remaining at Rose Hill and denied plaintiff's request for disinterment. This appeal followed.

Plaintiff contends that in denying her request to have her father's and sister's remains disinterred, the trial court impermissibly considered theological doctrine in violation of the Establishment Clause of the First Amendment. We agree.

■ Civil courts of this country have accepted jurisdiction to resolve, by applying equitable principles, burial and reinterment disputes which had traditionally been resolved by ecclesiastical courts. *See In re Donn*, 14 N.Y.S. 189 (N.Y.Sup.Ct.1891).

Although civil courts have jurisdiction to resolve this question, their authority is limited by the Establishment Clause of the First Amendment. *Bishop & Diocese of Colorado v. Mote*, 716 P.2d 85 (Colo.1986).

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ..."

The Establishment Clause of the First Amendment is applicable to the states by the Fourteenth Amendment. *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658, (1969). That clause, applicable to the states by virtue of the Fourteenth Amendment, prohibits civil courts from resolving disputes by inquiring into and resolving disputed issues of religious doctrine and practice. *Bishop & Diocese of Colorado v. Mote, supra.*

 Consistent with the First and Fourteenth Amendments, civil courts have properly resolved church property disputes by applying "neutral principles of law," independent of ecclesiastical doctrine, while respecting the free exercise rights of members of a religious association. *See Jones v. Wolf,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). We conclude that the First Amendment requires Colorado courts to apply this secular approach to this controversy.

In applying "neutral principles of law," we conclude that, if addressed by the evidence, the following equitable considerations are appropriate:

1. The intent of the decedent and wishes of the surviving spouse or next of kin. *Pettigrew v. Pettigrew,* 207 Pa. 313, 56 A. 878 (1904).

2. Whether a written contract between the cemetery and decedent or next of kin exists that discusses rights of removal. *Cohen v. Congregation Shearith Israel,* 114 A.D. 117, 99 N.Y.S. 732 (N.Y.App. Div.1906)

3. Length of time interred. *See Hoppe v. Cathedral Cemetery,* 43 Pa.C. 53, 24 Pa.Dist. 344 (1915).

4. The practicality of disinterment. *See Hoppe v. Cathedral Cemetery, supra.*

5. Impact of disinterments on others. *In Re Donn, supra.*

 Here, the trial court found, on uncontroverted evidence, that the decedents had made no express declaration of their wishes for burial, disinterment, or their religious convictions. However, the trial court attempted to discern the decedents' wishes indirectly by first determining if the decedents were Orthodox Jews. Further, the trial court impermissibly based its determination that plaintiff's father was an Orthodox Jew on conflicting theological conclusions of various religious scholars. Once making this determination, the trial court concluded, again based on conflicting religious doctrine, that, as an Orthodox Jew, plaintiff's father would oppose the requested disinterment and reburial in a non-orthodox Jewish cemetery.

These holdings were erroneously based on the resolution of conflicting theological principles which is inconsistent with the Establishment Clause of the First Amendment. *See Bishop & Diocese of Colorado v. Mote, supra.* Hence, the judgment entered thereon cannot stand.

The judgment is reversed, and the cause is remanded for findings of fact and conclusions independent of religious doctrine and based on neutral principals of law.

METZGER and CRISWELL, JJ., concur.