No. 17,141.

EARL DOUGLAS, ET AL. *v.* FIRST BAPTIST CHURCH OF
FT. COLLINS, ET AL.
(287 P. [2d] 965)

Decided September 6, 1955.   Rehearing denied October 10, 1955.

Mr. GLEN L. DALY, for plaintiffs in error.

Mr. S. T. ANDERSON, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the
Court.

THIS case presents an attempt by a small minority group of the members of The First Baptist Church of Fort Collins to have a civil court enjoin the majority of the membership from disaffiliating with the Northern Baptist Convention, an organiation which came into existence about the year 1907, through which Baptist churches were afforded an opportunity to cooperate in the handling of missionary money. The church here involved was organized in 1879 and affiliated with the Convention soon after its organization. This affiliation was voluntary and was the desire of the majority if not of the entire membership. In later years a pastor of the church entertained a belief that the leadership of the Convention, through some theological deviations, was fostering beliefs contrary to those held sacred by the church during the entire period of its existence. This may be described as "modernism" and it so aroused the membership that a special meeting was called to consider the matter. At that time the membership voted 155 to 56 to disaffiliate with the Northern Baptist Convention and affiliate with another organization known as the Conservative Baptist Association of Colorado.

On the 18th day of April, 1950, the minority group filed a class action for an injunction, seeking to have the resolution adopted by the majority on March 24, 1948, decreed null and void, and that defendants, constituting the majority of the church membership, permanently be enjoined and restrained from withdrawing said church from its cooperation with the Northern Baptist Convention, and from attempting to affiliate said church with the Conservative Association.

The complaint contains 42 folios and it precipitated voluminous pleadings in the way of motions, and 145 interrogatories and the answers thereto. The answer to the complaint contains 29 defenses, and the trial court's opinion consumes 50 folios of the record, which consists of 3,458 folios.

The church property is in no way involved in this

action, and a motion to dismiss the complaint was timely filed on the ground that the court lacked jurisdiction over the subject matter; that civil courts have no authority to inquire into the ecclesiastical, spiritual or doctrinal questions of an independent congregation or church; that courts are not to be resorted to in controversies or questions of ecclesiastical nature, where independent congregations such as constitute the membership of the church in question, are controlled and governed by the will of the majority of its membership; and finally that the complaint fails to make any allegations as to church policy. This motion should have been sustained; however, the trial court patiently heard all the evidence and arguments of counsel and found, in substance, that the church was organized as an independent congregation and that the matters and things complained of by plaintiffs were matters of local church regulation, which they had a right to do without interference by the court.

Counsel for defendants in error urges that in the event another trial is ordered that the rulings of the trial court should be passed upon in this case.

We have not consumed our time by considering the merits or demerits of the evidence, and have concerned ourselves only with resolution of such of the evidence as tended to establish the fact that the church here in question is an independent and self-governing religious body.

One of the exhibits admitted in evidence, is the constitution adopted by the church at the time of its organization. Sections 1 and 2 of Article III thereof is as follows:

"This church is independent so far as relates to its internal organization and the regulation of its own affairs. It is answerable to no ecclesiastical body, except by its own consent. It controls the admission, discipline, and removal of its members according to its own understanding of the word of God.

"Section 2. Recognizing the necessity for united denominational action that efficiency may result, and being

in general accord with the large denominational aim, this church seeks heartily to cooperate with the Associational, State and National organizations of Baptists within the scope of which its field lies."

Thus by its own constitution, it is beyond question a self-governing and independent religious congregation. The question here presented is purely ecclesiastical, and is a matter over which courts neither assume nor exercise jurisdiction. Without the primary right to construe their own laws or regulations, such organizations could no longer enjoy that autonomy which lends stimulation to their lay activities. By the provisions of their constitution just recited, it is crystal clear that the church considered itself independent and answerable to no other body or outside organization. By the action here questioned, not the slightest suggestion is made that defendants have in any respect departed from the faith expounded by the Baptist denomination. According to their view of proper regulation of their church affairs, the majority disaffiliated from the Northern Convention, which, as a free and democratic body, they had a right to do. In the exercise of that same right, they could affiliate with such association as they choose. It is to be remembered that these so-called conventions or associations of various religious bodies, are not denominations, but merely associations of churches of one faith and creed.

Courts cannot, and should not, interfere with the internal regulation of such an independent body. We again emphasize the fact that no property rights are here involved or affected, and it is abundantly clear that a schism developed and exists because of a difference of opinion as to matters of faith or discipline. In such circumstances, the civil courts do not have the right to interfere. Settlement of matters in connection with the internal regulation of the organization is a matter for the membership to determine and is absolutely essential to the freedom of action in religious matters.

Plaintiffs in error vaguely suggest that there was an

implied trust that the phyhical property would be used only for the promotion of the doctrine of a particular religious denomination. There was nothing impressed upon the church in question except that it be and remain a Baptist church. This does not involve any physical property of the congregation. If a change in the basic Baptist doctrine was of significance, it would be of no concern in this case, because only the act of affiliation or disaffiliation with certain conventions is involved. If the theory upon which plaintiffs, now plaintiffs in error, brought this action was to be adopted and approved by the courts, then the road would be opened to all disgruntled minority groups to seek relief in the courts even though they had bound themselves by their constitution to a majority rule.

Plaintiffs have not been deprived of any civil or property right and courts are not to be concerned with internal differences of opinion or practices of such church societies. Where there is nothing involved except the right to exercise their freedom to direct the affairs of their free and independent organization, which is a law unto itself in such matters, the minority cannot invoke the strong arm of the courts. The trial court was right in denying the injunctive relief prayed for and dismissing the complaint and therefore its judgment as entered therein is affirmed.

MR. JUSTICE BRADFIELD did not participate in the consideration of this case on review.