Stevens, J.
These actions were tried jointly and raise the common question of which of two factions of parishioners of the Russian Church of Our Lady of Kazan (Kazan) is entitled to control the parish and its properties. The answer to this question will determine which of two competing hierarchies has overall supervision or jurisdiction over Kazan. In searching for the answer we look to the organization and development of the parish, under which hierarchy it was incorporated, and whether such hierarchy was independent or part of a larger organization.
Plaintiff’s Exhibit 2A, in evidence, entitled “ On The Organization Of The Church-Parish-Community in Sea Cliff, L. I.”, recites that in July, 1942, several members of the Russian community, 11 in accordance with the instruction of His Eminence the Very Reverend Theophilus, Metropolitan of all America and Canada ”, came together under the chairmanship of the Assistant Dean and composed the document, termed therein a “ decree ”. In that writing the community committed itself “ to acquire all objects necessary for the conduction of church services * * * that the chapel under construction will be completed in the next nearest future ’ ’, and assumed the responsibility of paying monthly dues. “ In accordance with the instruction of His Eminence ” officers of the community were elected and “ [t]he Community commits to live according to the Normal Statute of the Russian Orthodox Greek Catholic Church of America [the Metropolia]. ” Under date of July 15, 1942, the document was approved by Metropolitan Theophilus in his own handwriting.
By letter dated July 17, 1942, addressed to the Church Committee of the community, the committee was informed that His Eminence Metropolitan Theophilus approved the petition and decree, named the community Our Lady of Kazan, and appointed a rector of the parish.
On December 3, 1942, the church, describing itself as an unincorporated Russian Orthodox Greek Catholic Church, filed a certificate for the purpose of incorporating as a Christian Orthodox Church of the Eastern Confession, and was incorporated under the Religious Corporations Law of the State of New York as the Russian Church of Our Lady of Kazan. One *460 of the named trustees was the rector appointed by Metropolitan Theophilus.
In 1969, a schism developed among the parishioners of Kazan and in February, 1970, defendants-appellants in the first action (plaintiffs-appellants in Action No. 2, collectively referred to herein as appellants) unilaterally seceded from the Metropolia, forcibly took over the parish properties and attempted to transfer the parish and properties from the Metropolia, under which it had organized, to the jurisdiction of the Primate and Bishops ’ Synod of the Russian Orthodox Church Outside Russia (Synod of Bishops).
In Action No. 1, the parishioners faithful to the Metropolia sought to enjoin the secessionists from taking over the parish and property and to recover control.
In Action No. 2, the secessionists sought a declaratory judgment validating the February, 1970 actions. A joint trial of the two actions was directed by order entered September 8,1970.
After trial the court (Liff, J.), in a thoughtful and far-reaching opinion, decided that Kazan was and is a parish under the jurisdiction of the Metropolia. The Appellate Division, one Justice dissenting, affirmed in Action No. 1, and modified in Action No. 2, to reinstate the complaint and to declare the rights of the parties. The dissent was of the view that the First Amendment forbade the court’s determining which religious hierarchy controls the parish.
It is not our purpose, nor do we attempt to resolve any doctrinal dispute, which might exist between Kazan, the Metropolia and the Synod of Bishops, or to pass upon the merits of a religious controversy. Our purpose is to determine which faction of the parishioners shall control the parish and the property of Kazan. In response to a question during argument, it was stated that the trustees of Kazan hold the property of Kazan in trust for the greater church body of which it is a part. Simply stated, the issue then is whether control of the property shall be vested in a group loyal to the church as it was founded under the Metropolia, or be given over to a dissident faction.
The record reveals uncontroverted evidence that Kazan, prior and subsequent to its incorporation and up to at least 1970, considered itself to be affiliated with and a parish of the Metro- *461 polio. Virtually nothing in the record serves to establish a direct tie to the Synod of Bishops. Nor did the yearbooks of the Synod from 1949 to and including 1970, list the Metropolia as a district, or Kazan as a parish of the Synod, although Synod parishes in nearby areas were so listed for the same period. However, the yearbooks of the Metropolia did list Kazan as a parish of the Metropolia. Plaintiffs’ Exhibit 2A states the community was committed to live “ according to the Normal Statute of the Russian Orthodox Greek Catholic Church of America.” The Metropolia at all times since 1924 insisted upon its autonomy and administrative independence, and its membership in other national bodies such as the Federal Council of Churches (now the National Council of Churches of Christ in the United States) emphasizes this fact. In 1970, by agreement with the Moscow Patriarchate of the Russian Orthodox Church, the Metropolia achieved autocephaly, an independent, self-governing status.
When Kazan was organized, its members, and later its incorporators, were free to select the ecclesiastical body with which it wished to affiliate or become subordinate. It knowingly and voluntarily chose the Metropolia and consistently recognized its authority. The trustees thus held the property in trust for that greater body. A relationship was created and recognized by both sides, the Metropolia and Kazan, which should endure so long as parishioners loyal to Kazan wish it to remain affiliated with the Metropolia or its successor. A difference between competing church factions over religious doctrine would not permit a civil court to interfere and award church property on the basis of the court’s interpretation of religious doctrine (Presbyterian Church v. Hull Church, 393 U. S. 440, 449). Kazan is and, since 1942, has been a separate legal entity, a religious corporation. In 1963, an addendum to the statute reaffirmed Kazan to be a part of the Russian Orthodox Greek Catholic Church of America, headed by Metropolitan Leonty or his successors. The trustees of the church were to serve as the custodian of the parish property. Over the years and up to about 1970, Kazan recognized the Metropolia as the body with which it was affiliated, to which it paid annual assessments, and to which generally, it submitted for approval minutes of the annual meeting.
*462 "While the parties in their briefs make references to the relationship which allegedly existed between the Metropolia and the Synod of Bishops, we have refrained from any discussion or evaluation of the merits of their respective positions. The ultimate relationship between the Metropolia and the Synod can be determined only by recourse to ecclesiastical considerations, and that ultimate issue is foreclosed to us. (See Maryland & Va. Churches v. Sharpsburg Church, 396 U. S. 367, 370.) “ Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without ‘ establishing ’ churches to which property is awarded. * * * the [First] Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine ”. (Presbyterian Church v. Hull Church, 393 U. S. 440, 449, supra.) This we have attempted to do.
The record supports the conclusion that the Metropolia never became merged in the Synod of Bishops and Kazan therefore owed no allegiance to the Synod.
It is clear from the foregoing that the Metropolia was the governing body into which Kazan incorporated itself in 1942, and that the Metropolia continued as such body to exercise general authority over Kazan, and was exercising such authority at the time of the schism. The right to the property and to the use of the parish property belongs with the faction which remained loyal to Kazan and to the Metropolia, the governing church body when the schism began.
The order of the Appellate Division should be affirmed, without costs.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur; Judge Rabin taking no part.
Order affirmed.