534 P.2d 334 (1975)
Sara BERNSON et al., Plaintiffs-Appellees,
v.
James F. KOCH et al., Defendants-Appellants.
No. 73-464.
Colorado Court of Appeals, Div. II.
January 25, 1975.
Rehearing Denied February 25, 1975.
*335 Strand, Holst & Hilbert, Otto K. Hilbert, Colorado Springs, for plaintiffs-appellees.
Gibson, Gerdes & Campbell, Frederick H. Campbell, Paul J. Gerdes, Alan F. Barton, Colorado Springs, for defendants-appellants.
Selected for Official Publication.
PIERCE, Judge.
This action was engendered by a dispute between two factions of the Mt. Olive Evangelical Lutheran Church of Colorado Springs. The Mt. Olive Church congregation was formally established in 1947 by adoption of a church constitution. In August of the same year, the Church became a member of the Wisconsin Evangelical Lutheran Synod (Synod), and retained such membership until it was suspended by the Synod on July 10, 1972. During that period, the ties between the Mt. Olive Church and the Synod were financial as well as *336 ecclesiastical. The Synod granted the Church operating subsidies and low interest loans, while the Church donated a portion of its income in support of the Synod. Initially, the Synod held title to the chapel and parsonage properties, but, in 1966, when the Church incorporated under the provisions of § 7-40-101 et seq., C.R.S.1973 (C. R.S.1963, 31-19-1 et seq.), the Synod deeded the properties to the Mt. Olive Church, retaining a deed of trust to secure payment of the outstanding loans on the properties.
A doctrinal dispute arose between the Synod and Pastor Koch of the Church, resulting in Paster Koch's suspension from membership in the Synod on May 14, 1972. At the July 10, 1972, quarterly meeting of the voters of the Church corporation, the congregation resolved by a majority vote to retain Pastor Koch as pastor of the Church, to support the ecclesiastical appeal of his suspension, and to remain a member of the Synod. Because of its support of Pastor Koch, the Church was suspended from membership in the Synod.
Subsequently, 60 communicant members of the Mt. Olive Church, several of whom were voting members of the Church, sent a written protest to the Synod, objecting to the retention of Pastor Koch and seeking to remain in membership with the Synod. The president of the Nebraska district of the Synod responded by letter which stated, "[W]e do recognize and acknowledge those who have signed the [protest] as members of the Wisconsin Evangelical Lutheran Synod." On July 9, 1973, the voters of the Church corporation adopted a resolution that all the members and the pastor of the Church resign their membership in the Synod.
The plaintiffs, who, with one exception, are the 60 communicant members of the Church who signed the protest, filed this action seeking a declaration that they are the sole owners of the Church chapel, parsonage, and school properties and further asking an injunction restraining the defendants from exercising any right of ownership or possession over the properties. Trial was to the court, which on September 25, 1973, entered findings which included the following:
"Defendant Koch has the support of the Church Council and the majority of the members of the Church.
"The Court concludes that the Church is an independent self-governing religious congregation that has affiliated with the Synod and now the majority of the Church members have voted to support Pastor Koch and to withdraw from membership in the Synod."
The court thereupon dismissed plaintiffs' complaint. Plaintiffs filed a motion for new trial and a motion to amend the findings and judgment. The court then entered an "Amended Findings and Order" which included six "additional findings," among which were the following:
"Plaintiffs are recognized as members of Mt. Olive Church by the Synod.
"That Synod is a religious denomination.
"That the constitution of Mt. Olive Church and the constitution of the Synod as to Article II (Articles of Faith) are identical."
The court thereupon vacated its September 25 order and granted plaintiffs the relief prayed for in their complaint. We reverse.

I.
Proper resolution of this case requires an examination of the restrictions placed upon this court by the First Amendment. The freedom of religion provisions of the First Amendment, applied to the states through the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (free exercise clause); Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (establishment clause), prohibit the civil courts, as well as the legislatures, from injecting themselves into ecclesiastical disputes. Kreshik v. St. Nicholas Cathedral, 363 U.S. 190, 80 S.Ct. 1037, 4 L.Ed.2d 1140. See Kedroff v. St. Nicholas Cathedral, 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120.
*337 The role which civil courts may play in resolving church property disputes has recently been summarized by the United States Supreme Court in Presbyterian Church in United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658:
"It is of course true that the State has a legitimate interest in resolving property disputes, and that a civil court is a proper forum for that resolution.. . .
. . . . . .
"Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without `establishing' churches to which property is awarded. But First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice.. . . [T]he Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine."
The author of the Blue Hull opinion and two other justices, concurring in Maryland & Virginia Eldership of Churches of God v. Church of God at Sharpsburg, 396 U.S. 367, 90 S.Ct. 499, 24 L.Ed.2d 582, have suggested two approaches which may be used by courts in settling church property disputes so long as the approaches involve no consideration of doctrinal matters. First, in what may be called the "polity" approach, the court determines whether the church organization is congregational or hierarchical, and then acquiesces in the decision made by the proper church governing body. Second, the court may apply the "formal title" approach, determining property rights by studying deeds, reverter clauses, and general state corporate law. A third possible approach, not mentioned by the concurring justices in Sharpsburg, but not prohibited by the holding in Blue Hull, is to apply trust theories purged of the doctrinal facets present in the Blue Hull case. See Russian Church of Our Lady of Kazan v. Dunkel, 33 N.Y.2d 456, 354 N.Y.S.2d 631, 310 N.E.2d 307. See generally Annot., 52 A.L.R.3d 324.
It is evident that the trial court attempted to employ the polity approach. However, even if we were to adopt the same approach, we could not uphold the conclusion ultimately reached by the trial court.
Under the polity approach, civil courts must accede to the decision made by the proper church governing body. Here, by the court's September 25 finding, it determined, on sufficient evidence, that the Mt. Olive Church is an independent selfgoverning religious congregation, and this finding is not expressly or impliedly contradicted by any of the "additional findings" subsequently made by the trial court. Hence, by this finding, the proper church governing body was the Mt. Olive Church congregation, and not the Synod.
Since the trial court applied an erroneous conclusion of law to its findings, the judgment based on the polity approach could not be upheld on review. American National Bank of Denver v. Christensen, 28 Colo.App. 501, 476 P.2d 281.
However, there is a more compelling reason for reversal of the trial court's judgment. As the concurring justices in Sharpsburg noted, courts may not use the polity approach if it involves consideration of doctrinal matters. Indeed, it has been stated that determination of a church's polity "will almost inevitably involve ecclesiastical considerations." Merryman v. Price, 147 Ind.App. 295, 259 N. E.2d 883, cert. denied, 404 U.S. 852, 92 S. Ct. 89, 30 L.Ed.2d 92. The present case furnishes an example of such entanglement of polity and doctrine. Plaintiffs' evidence included testimony to the effect that certain religious documents are susceptible of only one legitimate interpretation and that all members of the Church are, therefore, bound to adhere to the interpretation announced *338 by the Synod. Thus, plaintiffs' evidence was that the Church's assertedly hierarchical structure is based, at least in part, upon a doctrinal belief. Therefore, since we are prohibited by First Amendment principles from using the polity approach, we employ the formal title method for resolution of church property disputes as suggested in the Sharpsburg case.
The evidence supports the trial court's finding that title to the properties in question is held by the Mt. Olive Church corporation. Plaintiffs, through the allegations in their complaint, admitted that the defendants are the duly elected officers of the Church corporation and members of the Church Council, which, according to Article X of the Mt. Olive Church constitution, "shall control the corporate property according to the direction given by the congregation." The trial court found, on sufficient evidence, that the majority of the voting members supported Pastor Koch and the Church Council. Therefore, under the formal title approach which we adopt in this case, the Church Council, with the support of the majority of the voting members of the Church is entitled to the use, possession and enjoyment of the Church properties.
Plaintiffs attempt to extend the formal title analysis one step further, arguing that the dispute is governed by Article VIII of the Mt. Olive Church constitution, which provides:
"If at any time a separation shall occur in this congregation on account of doctrine or for any other cause (which God may graciously prevent), the property of this congregation and all of its benefits shall remain with those members who adhere to this Constitution, i. e. three or more members adhering to this Constitution."
Plaintiffs' contention would have merit, if it were not for the fact that the presence of Article II of the Church constitution[1] makes it impossible for this court to decide which Church faction has adhered to the Church constitution unless this court resolves an ecclesiastical dispute. Such involvement is prohibited by the Blue Hull holding and, therefore, we reject plaintiffs' contention. As the Court stated in Blue Hull, ". . . States, religious organizations, and individuals must structure relationships involving church property so as not to require the civil courts to resolve ecclesiastical questions."

II.
Our resolution of this case makes it unnecessary for us to consider defendants' other allegations of error, but it does require us to consider plaintiffs' argument that the trial court's judgment is supportable by a trust theory. Plaintiffs apparently contend that the properties at issue in this case were held by Mt. Olive Church subject to an express trust in favor of the Synod.
Preliminarily, we observe that a trust, whether denominated an "express" trust or an "implied" trust, cannot be enforced by civil courts to resolve church *339 property disputes if application of this trust theory would require the courts to involve themselves in matters which are "at the very core of a religionthe interpretation of particular church doctrines and the importance of those doctrines to the religion." Blue Hull, supra. While we agree that the Blue Hull holding does not prohibit the courts from enforcing a trust in favor of a church hierarchical organization, so long as continuance of the trust is not predicated upon the organization's adherence to its original religious doctrines, (see Blue Hull, supra, (Harlan, J. concurring)), there is insufficient proof of such a trust in this case.
To support their contention that a trust exists, plaintiffs point to the long membership of the Mt. Olive Church in the Synod, and stress the following paragraph of the certificate of incorporation of the Church:
"Paragraph Second: The object for which our said corporation is incorporated is for the purpose of conducting religious services, providing religious training, according to the tenents of the Evangelical Lutheran Church. . . ."
The plaintiffs contend that the words "Evangelical Lutheran Church" should be read as the "Wisconsin Evangelical Lutheran Synod." While there is some evidence to support plaintiffs' interpretation, there is other evidence from the plaintiffs' witnesses indicating that the words "Evangelical Lutheran Church" signify the Lutheran Church as it has existed since the 16th century. This evidence, as a matter of law, falls far short of establishing a trust on the chapel and parsonage properties in favor of the Synod. Compare Douglas v. First Baptist Church, 132 Colo. 286, 287 P.2d 965, with In re Estate of Granberry, 30 Colo.App. 590, 498 P.2d 960.
Judgment reversed.
ENOCH and STERNBERG, JJ., concur.
NOTES
[1] "This congregation accepts and confesses all the canonical books of the Old and New Testaments as the inspired Word of God, and all the symbolical books of the Evangelical Lutheran Church, contained in the Book of Concord of 1580, as a correct presentation of Christian doctrine, drawn from, and in full agreement with; the Holy Scriptures; hence, no doctrine shall be taught or tolerated in this congregation which is any degree at variance with the following symbols of the Evangelical Lutheran Church, viz,:

(1) The Three Ecumenical Creedsthe Apostolic, the Nicene, the Athanasian;
(2) The Unaltered Augsberg Confession;
(3) The Apology of the same;
(4) The Smalcald Articles;
(5) Luther's Catechisms, the Large and the Small;
(6) The Formula of Concord;
And we set forth that according to this norm of doctrine and faith all controversies which may arise in this congregation shall be decided and adjusted."