496 A.2d 403

**ORTHODOX CHURCH IN AMERICA, Dioceses of Eastern Pennsylvania, the Right Reverend Herman, Bishop of Philadelphia, St. Basil's Russian Orthodox Church of Simpson, Pennsylvania, Michael S. Mikilak, Dennis Buberniak, Stephen Kowalsky, Denise Cobb, Esther Kowalsky, Mary Burke, Reverend Michael H. Evans, Appellees,**

v.

**Joseph MIKILAK, Anna Egnatovich, Alexander Kowalko, Stephen Fedak, Deemer V. Sumple, Karen Chaparo, June Barna, John Luchonok, Sr., and Frank Ference, John Doe, Jane Doe, Appellants.**

Superior Court of Pennsylvania.

Argued July 10, 1984.

Filed July 26, 1985.

Gene E. Goldenziel, Scranton, for appellants.

William R. Lee, Scranton, for appellees.

Before  WIEAND,  OLSZEWSKI  and  POPOVICH, JJ.

OLSZEWSKI, Judge:

The parties, rival factions, vie for control of St. Basil's Russian Orthodox Church.  The matter before us resolves to a question of control over parish property.  Appellants represent that part of the congregation which voted to secede.  The lower court, finding that inadequate notice had preceded the vote, issued an order restoring possession of the church to appellees and enjoining appellants from interfering with appellees' use of the property.  By agreement of the parties, the lower court reached the ultimate issue and found that St. Basil's was a "hierarchical," as opposed to a "congregational" church.

Jurisdiction over an appeal in an action involving a corporation not-for-profit lies properly with the Commonwealth Court.  *See* 42 Pa.C.S. Sec. 762.  Rather than exercise our discretion to decide the questions in this case, we transfer

this matter to the court vested with jurisdiction to hear the appeal, the Commonwealth Court.

Accordingly, pursuant to Pa.R.A.P. 751 and 42 Pa.C.S. Sec. 5103(a), this case is hereby transferred to the Commonwealth Court. Jurisdiction is relinquished.

WIEAND, J., files a dissenting opinion.

WIEAND, Judge, dissenting:

A majority of the members of St. Basil's Russian Orthodox Greek Catholic Church of Simpson, Pennsylvania, voted to transfer affiliation from the ecclesiastical jurisdiction of the Orthodox Church in America to that of the Russian Orthodox Church Outside of Russia (Church Abroad). The Orthodox Church in America and the congregational minority, who are the appellees, commenced an action in equity in the Court of Common Pleas of Lackawanna County and obtained an injunction [1] restoring possession of church property to them and preventing any future interference with their use of the property to conduct religious services. On appeal, the majority contends that St. Basil's is a congregational church; and, therefore, the congregation, by majority vote, may use the church property to worship God in affiliation with whatever church body it chooses.

A majority of this Court has determined sua sponte that the appeal should be transferred for decision to the Commonwealth Court. I respectfully dissent. No party has objected to the jurisdiction of this Court to hear and decide the appeal; and, therefore, this Court's jurisdiction has been perfected. Pa.R.App.P. 741(a).[2] Because I am of the opinion that delay inherent in a transfer to the Common-

---

1. Although the initial relief requested was a preliminary injunction, the parties stipulated that the hearing be considered a final hearing; and a final decree was thereafter entered.

2. Pa.R.App.P. 741(a) provides as follows:

    **(a) General rule.** The failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the last day under these rules for the filing of the record shall, unless the appellate court otherwise orders, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of law vesting jurisdiction of such appeal in another appellate court.

wealth Court will be a disservice to the parties and will not serve the interests of judicial economy, I would retain jurisdiction and decide the appeal. See: *Schultz v. City of Philadelphia,* 314 Pa.Super. 194, 460 A.2d 833 (1983); *Commonwealth v. Guinther,* 290 Pa.Super. 441, 434 A.2d 834 (1981); *Schrecengost v. Armstrong School Dist.,* 289 Pa. Super. 292, 433 A.2d 72 (1981); *Jost v. Phoenixville Area School Dist.,* 267 Pa.Super. 461, 406 A.2d 1133 (1979). See also: *Bethlehem Twp. v. Emrick,* 77 Pa.Cmwlth. 327, 465 A.2d 1085 (1983), *rev'd on other grounds,* 506 Pa. 372, 485 A.2d 736 (1984).

The history of the struggle for power between three branches of the Russian Orthodox faith has been thoroughly briefed and argued. Also of assistance is the dissertation of Church history in *St. Michael and Archangel Russian Orthodox Greek Catholic Church v. Uhniat,* 436 Pa. 222, 259 A.2d 862 (1969), *cert. denied,* 400 U.S. 823, 91 S.Ct. 45, 27 L.Ed.2d 51 (1970) and *Russian Church of Our Lady of Kazan v. Dunkel,* 67 Misc.2d 1032, 326 N.Y.S.2d 727 (1971), *aff'd,* 33 N.Y.2d 456, 310 N.E.2d 307, 354 N.Y.S.2d 631 (1974). This history discloses that at the turn of the twentieth century, the Church had been united under the sole control of the Holy Synod in Russia. In 1917, a Patriarch was elected to replace the Holy Synod as head of the Church. In the early 1920s, refugees from the Bolshevik Revolution fled to Constantinople and eventually developed a competing branch of the Russian Orthodox faith which became known as the Russian Orthodox Church Outside of Russia (Church Abroad). The Church Abroad refused to submit to the Patriarch's rule because it feared Soviet domination of the Patriarch. The Church Abroad is consequently considered by the Patriarch to be a schism, and it is not recognized canonically. During this period the American diocese of the Russian Orthodox Church was also concerned about possible Soviet influence on Church affairs. At an American Sobor held in April, 1924, the American diocese formed the Metropolia, later known as the Orthodox Church in America, which separated from the Patriarch's rule in 1933. By the year 1933, therefore, there were three

branches of the Russian Orthodox faith: the Church Abroad, The Orthodox Church in America, and the Patriarch, all of which were competing for control of parishes in America. In 1970, however, the Patriarch recognized the Orthodox Church in America as canonical with exclusive jurisdiction over all parishes affiliated with the Orthodox Church in America. Although the Patriarch and the Orthodox Church in America are now in affiliation, neither recognizes the Church Abroad.

The Church's history is helpful in understanding the obviously deep-rooted feelings and beliefs of the parishioners involved in the present dispute, but the determinative issue in this litigation is whether St. Basil's is a congregational or a subordinate church. If it is congregational, its property is subject to control by a majority of the members. If it is hierarchical, however, the law of Pennsylvania prevents the diversion of church property from control by the parent church body. Therefore, it is necessary to determine whether St. Basil's is a church existing under the hierarchical jurisdiction of the Orthodox Church in America or whether it is an independent, congregational church possessing full power and authority to control its own property. If St. Basil's is an independent, congregational church with power to control its own property, then a majority which elects to transfer allegiance to the Church Abroad can retain its property. Conversely, if it is hierarchical so that its property is held subject to control by the Orthodox Church in America, then its property would have to remain subject to hierarchical jurisdiction. *Archbishop Most Reverend Metropolitan Ambrose Senyshyn v. Karlak*, 462 Pa. 348, 351, 341 A.2d 114, 115–116 (1975); *St. Michael and Archangel Russian Orthodox Greek Catholic Church v. Uhniat, supra; St. John Chrysostom Greek Catholic Church of Pittsburgh v. Elko*, 436 Pa. 243, 259 A.2d 419 (1969); *Pennsylvania State Spiritualist Assn. v. First Church of Spiritual Research & Healing*, 430 Pa. 527, 529, 244 A.2d 31, 33 (1968).

The trial court held that St. Basil's was not a congregational church but a hierarchical church and that its proper-

ty, therefore, could only be used for religious services held in accordance with the doctrine and discipline of the Orthodox Church. My review of the record suggests that this conclusion of the trial court is not supported by the facts. The trial court also found, however, that inadequate notice had been given of the special congregational meeting at which the vote was taken to transfer affiliation. I agree that the notice was inadequate. Therefore, the issuance of the order restraining the congregational majority from interfering with religious services held by the minority according to the rites and traditions of the Orthodox Church in America was proper.

The trial court concluded that St. Basil's was a hierarchical church. In doing so, the court relied almost exclusively upon the purpose clause in its corporate charter which provided: "Said corporation is formed for the purpose of the worship of Almighty God, according to the faith, doctrine, creed, discipline and usages of the Russian Orthodox Church." I am unable to agree that the purpose clause defining the form of worship to be followed by St. Basil's congregation is controlling of the present issue. This clause deals with ecclesiastical affiliation; it does not purport to determine title to the congregation's property. When the trial court relied exclusively on the foregoing language to determine ownership of property, it fell into error. Of greater significance is the article in the charter which provides that title and control of all property of the corporation is subject to control of and disposition by a majority of the lay members. This article specifically provides as follows:

Any property, real or personal, which shall hereafter be bequeathed, devised or conveyed to said Corporation shall be taken and held, to enure to it, subject to the control and disposition of the lay members thereof, or such constituted officers or representatives thereof, as shall be composed of a majority of lay members.

This language suggests congregational ownership and control of church property and not ownership and control by the parent, hierarchical body.

If the articles of incorporation are deemed ambiguous, we may also look to the history of St. Basil's. *Archbishop Most Reverend Metropolitan Ambrose Senyshyn v. Karlak, supra.* A review of St. Basil's history confirms congregational ownership of property. In 1905, shortly after its inception as an unincorporated congregation, title to the real estate on which St. Basil's is now erected was taken and held in common by the Russian Orthodox Church of St. Basil, in Simpson, Pennsylvania and by Archbishop Tikhon. The congregation of St. Basil's was incorporated in 1924 consistently with Articles of Incorporation to which we have referred and which continue in effect today. In 1927, title to the church property, by litigation and subsequent conveyance, became vested solely in the name of the corporate congregation.

In 1956, St. Basil's determined to withdraw its canonical affiliation with the Russian Orthodox Church and became affiliated with the Orthodox Church in America. Litigation to enjoin the congregation's change of affiliation and its use of the church property for religious services according to the rites of the Orthodox Church in America was settled amicably. As a result of that settlement, St. Basil's ownership of its property was confirmed; it was used for worship services consistent with its canonical affiliation with the Orthodox Church in America. This new affiliation by the congregation and its use of the church property in a manner allowing consummation thereof suggests most strongly that St. Basil's was congregational, not hierarchical. Whatever claim the Orthodox Church in Russia might previously have had to the church property owned by St. Basil's was terminated by the settlement of litigation pursuant to which St. Basil's became affiliated with the Orthodox Church in America. The legal significance of the 1956 affiliation of St. Basil's with the Orthodox Church in America is not lost merely because the schism between the Russian Orthodox Church and the Orthodox Church in America was healed in 1970.

The Orthodox Church in America, with which St. Basil's became affiliated in 1956,[3] was structured upon congregational, rather than hierarchical, control of church property. Thus, Section eight of the Statute of the Orthodox Church in America provided:

a) *The parish or parish corporation is the sole owner of all parish property, assets, and funds.* In administering them, however, the parishioners and the officers elected by them must always remember the religious nature, purposes and goals of the parish and act as trustees of God's, not man's, property. The parish, as the whole Church, serves God and cares for God's work in the world, and all decisions concerning parish property must be inspired by that care and by the spiritual needs of the Church.

b) *If the parish is abolished, its property is disposed of following the provisions of the parish bylaws.* If no such provisions exist, the property is at the disposition of the diocesan authority. In all cases the sacred and untouchable items: the Holy Antimension, the Tabernacle and the Sacred Vessels must be surrendered to the Diocesan Bishop.

(Emphasis added). These governing rules continue in effect. They have not been altered by the renewed canonical relationship between the Orthodox Church in America and the Patriarch of the Russian Orthodox Church.

Appellees called as a witness a person deemed expert in the structure and canonical laws of the Orthodox Church in America. His testimony that each faithful is subject to the moral and religious authority of the bishop is not determinative of the right to control church property. The true significance of the relationship between the Orthodox Church in America and its member congregations becomes apparent when it is viewed in the light of each congrega-

---

**3.** It is interesting and not lacking in significance that despite this new affiliation, the purpose clause of St. Basil's articles of incorporation was not altered. Despite the continuation of the purpose clause in its articles of incorporation, the congregation at all times asserted its right, by majority vote, to control its own property.

tion's right to reject the assignment of pastors to it. Similarly, the expert's opinion that a congregational church cannot exist canonically within the Russian Orthodox Church suggests only that St. Basil's, as an affiliate of the Russian Orthodox Church, was required to conduct worship services and other church activities consistently with the custom, traditions and discipline of the parent body. The church's form of worship alone did not—it could not—alter the congregational structure of the corporate church and the right of its members to control the use and disposition of its property.

Because there is no evidence on this record to refute the congregational status of St. Basil's as established by its articles of incorporation, its history of controlling its own property, and the rules of the Orthodox Church in America with which it became affiliated in 1956, I cannot agree with the contrary conclusion reached by the trial court.

In reaching this decision, I have been mindful of and have given careful consideration to the decision of the Supreme Court in *St. Michael and Archangel Russian Orthodox Greek Catholic Church v. Uhniat, supra.* Any similarity between the facts of that case and those of the present one, however, are superficial only. Indeed, the only similarity is that St. Michael's in the prior case and St. Basil's in this case had both been affiliated at one time with the Russian Orthodox Church. The provisions contained in the articles of incorporation of St. Basil's, as well as its subsequent history, are different than those of St. Michael's. With respect to St. Basil's, they paint a picture more nearly in keeping with the facts in *St. John the Baptist Greek Catholic Church of Allentown v. Musko,* 448 Pa. 136, 292 A.2d 319 (1972), where the right of the congregation to control church property was affirmed.

Neither appellants nor appellees have argued on appeal the adequacy or inadequacy of the notice of the special congregational meeting at which St. Basil's disaffiliation with the Orthodox Church in America was decided. The trial court determined, however, that the special congregational meeting was the source of congregational action

which went far beyond matters of which notice had been given. The majority's action disaffiliating with the Orthodox Church in America, therefore, was improper; and the trial court could properly enjoin use of the church property pursuant to that action. The trial court, of course, has not enjoined a second congregational meeting. Thus, affirmance on this limited ground would not establish finally the rights of the competing factions. On the record presently before this Court, however, I am of the opinion that the church property is subject to control and disposition according to the will of a majority of its lay members. However, all members are entitled to notice of the meeting at which its canonical affiliation and disposition of property are determined.